IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CHANCE K. S. BATEMAN, | ) | CIVIL NO. 12-00033 SOM/BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DISMISSING FIRST |
| vs. | ) | AMENDED COMPLAINT |
| | ) | |
| COUNTRYWIDE HOME LOANS, aka | ) | |
| BAC Home Loan Servicing, LP; | ) | |
| THE BANK OF NEW YORK MELLON, | ) | |
| as Trustee for the | ) | |
| Certificateholders, CWABS, | ) | |
| Inc., Asset-Backed | ) | |
| Certificate Series 2005-3, | ) | |
| aka CWL 2005-3; | ) | |
| CWABS, Inc.; | ) | |
| MERSCORP, INC.; | ) | |
| MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, INC., a | ) | |
| wholly-owned subsidiary of | ) | |
| Merscorp, Inc.; | ) | |
| CHARTER FUNDING; | ) | |
| KEVIN A. DURHAM, individually | ) | |
| and as assistant secretary | ) | |
| for Mortgage Electronic | ) | |
| Registration Systems, Inc. | ) | |
| and Max Default Services | ) | |
| Corp.; | ) | |
| CALEB G HARGIS, individual | ) | |
| and as notary; | ) | |
| CORPORATE DOES 1-50; | ) | |
| JOHN DOES 1-50; and | ) | |
| JANE DOES 1-50 | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER DISMISSING FIRST AMENDED COMPLAINT**

**I.      INTRODUCTION.**

This removed action arises out of mortgage loan transactions. After his property was sold at public auction through a nonjudicial foreclosure proceeding, Plaintiff Chance K.

S. Bateman filed this action in state court on November 4, 2011, asserting various causes of action relating to his mortgage loans and the nonjudicial foreclosure. The Complaint was subsequently removed.

On January 24, 2012, Defendants filed a motion to dismiss. See ECF No. 6. On May 11, 2012, a telephone conference was held in which Bateman's Complaint was dismissed with leave to amend. See ECF No. 27.

On June 1, 2012, Bateman filed an Amended Complaint. See ECF No. 28. This document is unfocused and, in many respects, like a puzzle. Bateman asserts state-law claims for wrongful foreclosure (Count I), slander of title (Count II), unfair or deceptive acts or practices (Count III), and intentional or negligent infliction of emotional distress (Count IV). But the bases for these claims are not entirely clear. Rather than allege that any particular defendant did something, the counts refer to "Defendants" generally, and ask the court and opposing parties to figure out which Defendant may have done what based on factual allegations that have been incorporated by reference. In short, the court is asked to match allegations to claims and parties as if attempting to fit jigsaw puzzle pieces together to create a picture.

Defendants again seek dismissal of the First Amended Complaint. See ECF No. 30. The court grants that motion.

2

Because the wrongful foreclosure and slander of title claims are based on allegedly improper assignments of Bateman's loan, and because Bateman lacks standing to challenge those assignments, Counts I and II are dismissed.  Because Bateman's emotional distress claims are also based on allegedly improper loan transfers by Defendants, the emotional distress claims asserted in Count IV are also dismissed.  The unfair and deceptive trade practices claims asserted in Count III are dismissed as not properly pled.

**II.        BACKGROUND.**

The following factual summary is based on the allegations in the First Amended Complaint, ECF No. 28.  Bateman lived in a home in Kamuela on the Big Island of Hawaii.  Id. ¶ 1.

Countrywide Home Loans, Inc., approved a $251,000 loan to Bateman, secured by a mortgage on his home.  Id. ¶ 12.  On or about February 23, 2005, Bateman executed the loan documents for that loan, including a note and a mortgage.  The loan was a refinancing.  Id.  A copy of the mortgage was filed in the State of Hawaii Bureau of Conveyances on March 1, 2005, as Document No. 2005-040187, and is attached as Exhibit A to the First Amended Complaint, ECF No. 28-1, PageID #612.  The mortgage identifies Countrywide as the "Lender," and Mortgage Electronic Registration Systems, Inc. ("MERS") as its "nominee."

In 2010, the mortgage was purportedly assigned by MERS in its capacity as Countrywide's nominee to The Bank of New York Mellon FKA The Bank of New York as Trustee for the CertificateHolders CWABS, Inc., Asset-Backed Certificates, Series 2005-3. A copy of the Assignment of Mortgage was recorded in the State of Hawaii Bureau of Conveyances as Document No. 2010-077660 and is attached to the First Amended Complaint as Exhibit B, ECF No. 28-1, PageID #630. The Assignment of Mortgage was signed by Kevin A. Durham on May 29, 2010, in his capacity as the assistant secretary of MERS, and was notarized by Caleb G. Hargis on June 1, 2010. Id.

It appears that the transfer of Bateman's loan to Bank of New York was done in anticipation of foreclosing on the property, because Bank of New York, also on May 29, 2010, through Durham, its "Authorized Signatory," executed a Notice of Mortgagee's Intention to Foreclose Under Power of Sale. Durham appears to be the same person who executed the assignment of mortgage by MERS on behalf of Countrywide to Bank of New York. The notice of intent to foreclose was also notarized by Hargis on June 1, 2010. Hargis appears to be the same notary who notarized the Assignment of Mortgage from MERS on behalf of Countrywide to Bank of New York. A copy of the notice of intent to foreclose was filed in the State of Hawaii Bureau of Conveyances as

Document No. 2010-077661 and is attached as Exhibit C to the First Amended Complaint, ECF No. 28-1, PageID #634.

On March 31, 2011, Durham executed a Mortgagee's Affidavit of Foreclosure Sale Under Power of Sale as "Authorized Signatory" for Bank of New York.  See First Amended Complaint, Exhibit D, ECF No. 28-1, PageID #639.  This affidavit was filed in the State of Hawaii Bureau of Conveyances as Document No. 2011-056676.  Id.  It indicates that Bateman's property was sold to Bank of New York at public auction on March 11, 2011, for $175,500.  Id.

On July 7, 2011, Bank of New York "quitclaimed" the foreclosed property to itself.  The Quitclaim Deed was filed in the State of Hawaii Bureau of Conveyances as Document No. 2011-105744.  A copy of the Quitclaim Deed is attached to the First Amended Complaint as Exhibit E, ECF No. 28-1, PageID # 666.

Bateman alleges that "there is no certain record or unbroken chain of title to establish who [is] the legal owner and holder" of his note and mortgage.  First Amended Complaint ¶ 40.

**III.     RULE 12(b)(6) STANDARD.**

Under Rule 12(b)(6), review is generally limited to the contents of the complaint.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).  If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as

5

one for summary judgment.  See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).  However, courts may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  Documents whose contents are alleged in a complaint and whose authenticity are not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss.  See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  Sprewell, 266 F.3d at 988; Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).  Additionally, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint.  Sprewell, 266 F.3d at 988.

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)). A motion to dismiss may also be granted if an affirmative defense or other bar to relief is apparent from the face of the complaint, such as a statute of limitations. Imbler v. Pachtman, 424 U.S. 409 (1976).

**IV.    ANALYSIS.**

### A.    Bateman Lacks Standing to Challenge Voidable Agreements.

The bases of the claims asserted in the First Amended Complaint are not easy to decipher. Bateman makes 17 pages of allegations and then, in paragraphs 46, 55, 64, and 67 of the First Amended Complaint, alleges that Defendants did various things that rendered the assignment of Bateman's loan invalid. According to Bateman, this meant that all Defendants wrongfully foreclosed on his property (Count I), committed slander of title (Count II), committed an unfair or deceptive trade practice in violation of chapter 480 of Hawaii Revised Statutes (Count III), and inflicted emotional distress on him (Count IV). The essence of Bateman's claims is that Bank of New York lacked good title to foreclose on Bateman's property because there were problems with

the various assignments.  Bateman, however, lacks standing to challenge the validity of those assignments.

Bateman essentially argues that, before foreclosing on the property, Bank of New York must prove the validity of every transfer in the chain of title.  However, this court has never required a lender to go back and establish that every person or entity who assigned a note and mortgage had the power to do so.  Such a requirement would prove unworkable, as it may be difficult to locate the person who executed a document years ago or worked for company that no longer exists.  Instead, the court looks to whether a lender seeking to foreclose or defending a prior foreclosure was, at the time it sought to foreclose, the holder of the note and mortgage it seeks to foreclose.

Based on the documents attached to the First Amended Complaint, which includes recorded assignments of the loan, Bank of New York appears to have had standing to enforce the loan documents through a nonjudicial foreclosure procedure.  See Markham v. Markham, 80 Haw. 274, 281, 909 P.2d 602, 609 (Ct. App. 1996) (noting that the "central purpose of recording a conveyance of real property is to give notice to the general public of the conveyance and to preserve the recorded instrument as evidence").  Hawaii's courts long ago held that a plaintiff that shows a "direct chain of paper title that he is the owner of land" demonstrates "prima facie evidence of their contents" and that

8

title is vested in that plaintiff, subject to other claims such as adverse possession.  See Apana v. Kapano, 1911 WL 1761, *3 (Haw. Feb. 20, 1911).

This court has held on numerous occasions that borrowers like Bateman generally lack standing to challenge the assignments of their loans.  See Deutsche Bank v. Beesley, 2012 WL 5383555, *4 (D. Haw. Oct. 20, 2012) (noting that borrowers generally lack standing to challenge the assignments of their loans); Benoist v. U.S. Bank Nat'l Ass'n, 2012 WL 3202180, *5 (D. Haw. Aug. 3, 2012) (discussing numerous cases in which courts have concluded that borrowers lack standing to challenge assignments of their loan documents, and concluding that the plaintiffs could not set aside the assignment of a mortgage even when the terms of a pooling and service agreement were not followed); Au v. Republic State Mortg. Co., 2012 WL 3113147, *4 n.6 (D. Haw. July 31, 2012) (noting that borrowers who are not parties to or beneficiaries of a pooling and service agreement lack standing to challenge alleged violations of such agreements); Bank of New York Mellon v. Sakala, 2012 WL 1424655, *5 (D. Haw. Apr. 24, 2012) (same); Abubo v. Bank of New York Mellon, 2011 WL 6011787, *8 (D. Haw. Nov. 30, 2011) (same); Velasco v. Security Nat'l Mortg. Co., 823 F. Supp. 2d 1061, 1067 (D. Haw. 2011) (ruling that a borrower could not dispute the validity of an assignment of loan documents through a "slander of

title" claim because the borrower was not a party to or intended beneficiary of the assignment).

The reason debtors generally lack standing to challenge assignments of their loan documents is that they have no interest in those assignments, and the arguments they usually make do not go to whether the assignments are void ab initio, but instead to whether the various assignments are voidable. Debtors lack standing to challenge voidable assignments; only the parties to the assignments may seek to avoid such assignments. See 29 Williston on Contracts § 74:50 (4th ed.), available at Westlaw Willstn-CN § 74:50 (updated May 2012) (noting that a debtor may not assert that an assignment is voidable because it cannot be assumed that the assignor desires the voiding of the assignment).

"A contract that is void never attains legal effect as a contract and cannot be enforced, whereas a contract that is voidable is one where one or more of the parties have the power, by the manifestation of an election to do so, to avoid the legal relations created by the contract." 17A Corpus Juris Secundum § 169, available at Westlaw CJS Contracts § 169 (updated Sept. 2012). A contract is void when one of its essential elements is missing or when it is made in violation of law. A party cannot consent to an agreement that violates the law. See id. Accordingly, Hawaii courts have held that an agreement arising out of a foreclosure sale that contravenes a statute is void and

unenforceable.  See Lee v. HSBC Bank USA, 121 Haw. 287, 292, 218 P.3d 775, 780 (2009).  Hawaii courts have similarly held that a contract that involves an "unfair or deceptive practice" in violation of chapter 480 of Hawaii Revised Statutes is void and unenforceable.  See 808 Dev. LLC v. Murakami, 111 Haw. 349, 356, 141 P.3d 996, 1003 (2006).  A judge of this court has held that a company in bankruptcy liquidation may not validly assign its interest in a note and mortgage to another company that would thereafter seek to foreclose on property.  See Deutsche Bank Nat'l Trust Company, as Trustee Morgan Stanley ABS Capital I Inc. Trust 2007-NC-1 Mortgage Pass-Through Certs., Series 2007-NC1 v. Williams, 2012 WL 1081174, *3 (D. Haw. Mar. 29, 2012) (Seabright, J.).

On the other hand, only the parties to a voidable contract can seek avoidance of that contract.  "Only the parties to a contract may assert its nullity by virtue of a defect in consent."  17A Corpus Juris Secundum § 169, available at Westlaw CJS Contracts § 169.  Accordingly, a contract entered into by a minor or an insane person is generally voidable under Hawaii law, and the minor, upon reaching the age of majority, or the insane person, upon becoming sane, may choose to ratify or avoid the contractual obligations.  See Zen v. Koon Chan, 27 Haw. 369, 371 (1923).  Similarly, contracts induced by fraud or material misrepresentations are voidable.  See Exotics Haw.-Kona, Inc. v.

E.I. Du Pont De Nemours & Co., 116 Haw. 277, 288, 172 P.3d 1021, 1032 (2007). Other courts have determined that a lack of authority to enter into a contract makes the contract voidable, not void. See Emerson Elec. Co. v. Le Carbone Lorraine, S.A., 2009 WL 313754, *1 n1 (D.N.J. Feb. 4, 2009); Perri v. United States, 53 Fed. Cl. 381, 401 (2002).

In arguing that the terms of the pooling and servicing agreement were not followed such that his loan did not become part of the trust--the CertificateHolders CWABS, Inc., Asset-Backed Certificates, Series 2005-3, Bateman is challenging a voidable, not void, contract. Not being a party to the voidable agreement, Bateman lacks standing to argue that any transfer purportedly occurring pursuant to the agreement is invalid. See Beesley 2012 WL 5383555; Benoist, 2012 WL 3202180, *5; Au, 2012 WL 3113147, *4 n.6; Sakala, 2012 WL 1424655, *5; Abubo, 2011 WL 6011787, *8; Velasco, 823 F. Supp. 2d at 1067. Only the parties to the pooling and service agreement may argue that a mortgage was not made a part of it. If those parties agree that the mortgage is a part of the agreement even if the assignment of the mortgage fell outside its express terms, the parties essentially modify the agreement and ratify the inclusion of the mortgage. Debtors such as Bateman may not assert that the parties to the pooling and servicing agreement did not properly assign the mortgage; the allegations suggest that the parties to the pooling

and servicing agreement believe that they transferred Bateman's loan.  Under these circumstances, Bateman, a debtor who has failed to make payments under the terms of his loan documents, may not undo foreclosure proceedings by arguing that the holder of the note and mortgage lacked valid legal title to them because there may have been a problem with one or more transfers before the creditor obtained title.

    The court notes that Bateman does challenge the various transfers of his note and mortgage as being in violation of chapter 480 of Hawaii Revised Statutes.  If one of the transfers did violate that section, it would be void, as opposed to voidable.  For example, in <u>808 Development, LLC v. Murakami</u>, 111 Haw. 349, 356, 141 P.3d 996, 1003 (2006), the Hawaii Supreme Court declared that a contractor who failed to provide homeowners with written and verbal notice and disclosure of lien rights and bonding options before entering into a construction contract, a requirement of section 444-25.5 of the Hawaii Revised Statutes, may not enforce that agreement against the homeowners because the contract is void under sections 480-2 and 480-12 of the Hawaii Revised Statutes.  However, as described in more detail below, Bateman does not allege facts from which a violation of chapter 480 can be established such that a transfer would be void.  To the extent Bateman challenges voidable agreements, those challenges do not convert Bank of New York's conduct into "unfair

or deceptive acts or practices in the conduct of any trade or commerce" such that the voidable agreements become void under chapter 480.  In other words, a voidable agreement--one with a potential defect that a party to the agreement may assert--does not violate section 480-2 such that it automatically becomes void under section 480-12.

Because Bateman lacks standing to challenge the various assignments, and because Bateman's claims are based on those allegedly improper assignments, the wrongful foreclosure, slander of title, and emotional distress claims asserted in Counts I, II, and IV are dismissed.[1]

---

[1] In the court's usual prehearing inclinations, the court asked Defendants whether the original note had been returned to Bateman.  Citing caselaw from the Intermediate Court of Appeals for the State of Hawaii, Defendants indicated that they are not required to return the original note to a borrower.  That caselaw, however, may be distinguishable given the nonjudicial foreclosure proceeding used in this case. See, e.g., Indus. Mort. Co. v. Smith, 90 Haw 502, 511, 17 P.3d 851, 861 (App. 2001) (concluding that a court did not abuse its discretion in refusing to order a lender to return the original note after a judicial mortgage foreclosure action was completed because the final order of the court would have res judicata effect and preclude the lender and its assigns from attempting to collect again on the note); see also Spinney v. Greenwich Capital Fin. Prods. Inc., 2006 WL 1207400. *6 n.14 (D. Haw. May 3, 2006) (citing Smith for same proposition).  This court is not here deciding that the original note must be returned to Bateman, as that issue has not been briefed by the parties.  However, given Bateman's contention that he does not want to be put in a position of being asked to pay the note twice, and given Defendants' indication at the hearing that returning that note may not be problematic, Defendants may wish to consider returning that note to Bateman or depositing it with this court pending the outcome of this case.  Alternatively, Defendants may wish to consider filing some sort of satisfaction or release of mortgage.

> **B. Bateman Fails to Allege Facts Supporting His Claim that Chapter 480 of Hawaii Revised Statutes was Violated When Defendants Failed to Implement and Maintain a Loan Modification Program.**

Count III asserts a violation of sections 480-2 and 490-13 of Hawaii Revised Statutes. Section 480-2(a) states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Section 480-13 allows "Any consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480-2" to sue for damages and to enjoin the unlawful practices.

Bateman says that Defendants committed an unfair or deceptive trade practice when they failed to implement and maintain a loan modification program. See First Amended Complaint ¶ 63. Bateman's allegations are insufficient to survive a Rule 12(b)(6) motion to dismiss. Bateman was required to allege facts sufficient to raise a right to relief above the speculative level, on the assumption that all the allegations in the First Amended Complaint are true even if doubtful in fact. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Because it is not clear what the bases of Bateman's section 480-2 claim are, Bateman's allegations are insufficient to establish a

15

viable section 480-2 claim.  See, e.g., Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc., 113 Haw. 77, 113-14, 148 P.3d 1179, 1215-16 (2006) (reiterating the following requirements for a claim for a violation of HRS § 480-2: (1) an unfair or deceptive trade practice, (2) injury to the plaintiff's business or property resulting from that practice, and (3) actual damages).

Bateman may be arguing that Bank of New York did not receive legal title to his loan, as paragraph 63 of the First Amended Complaint refers to "false statements and fraudulent documents."  However, because the count incorporates by reference the facts set forth earlier, First Amended Complaint ¶ 60, the court and the parties are left to figure out what the count is referring to by matching allegations to claims.  See generally Prim Ltd. Liability Co. v. Pace-O-Matic, Inc., Civil No. 10-00617 SOM-KSC, 2012 WL 263116, at *5-6 (D. Haw. Jan. 30, 2012) (referring in the context of fraud claims to "shotgun" and "puzzle" pleadings that require opposing counsel and the court to incorporate numerous allegations into subsequent claims for relief or to complete a puzzle by matching up numerous allegations throughout a pleading) (citing Wagner v. First Horizon Pharm., Corp., 464 F.3d 1273, 1279 (11th Cir. 2006)).

It is not at all clear that Bateman's fraud-based section 480-2 claim satisfies the pleading requirements, assuming, of course, that the claim is grounded in fraud.  See

Smallwood v. NCsoft Corp., 730 F. Supp. 2d 1213, 1232-33 (D. Haw. 2010) (applying Rule 9(b)'s heightened pleading standard to section 480-2 claim arising out of a fraud-based claim).  If, for example, the chapter 480 claims are based on some kind of alleged fraudulent misrepresentation, the claim must be pled with particularity.  See Soriano v. Wells Fargo Bank, N.A., 2012 WL 1536065, *11 (D. Haw. Apr. 30, 2012).  If, on the other hand, the chapter 480 claims are grounded in something short of fraud, the chapter 480 claim is not subject to Rule 9(b)'s heightened pleading standard.  See Smallwood, 730 F. Supp. 2d at 1232; Peace Software, Inc. v. Hawaiian Elec. Co., 2009 WL 3923350, *8 (D. Haw. 2009).  Even if the heightened pleading standard does not apply, Bateman's section 480-2 claim based on "false statements and fraudulent documents" fails because it does not meet the minimal notice pleading standard.  That is, it does not sufficiently identify the unfair and deceptive trade practice or allege how Bateman was damaged as a result.

To the extent Bateman is attempting to assert a section 480-2 claim based on Countrywide's "failure to implement and maintain a loan modification program," the claim does not meet the minimal notice pleading standard.  At most, the First Amended Complaint alleges in Paragraph 14 that Countrywide did not have an operable loan modification program.  But it is unclear how any such failure amounts to an unfair or deceptive trade practice.

17

Finally, to the extent Bateman alleges that "Defendants'" conduct caused his property to diminish in value and become less marketable, id. ¶ 64, he again fails to meet the minimal pleading standard for a section 480-2 claim, as he does not allege what Defendants allegedly did, let alone which specific Defendant was responsible for what.

**V.      CONCLUSION.**

The First Amended Complaint is dismissed. Bateman is given leave to file a Second Amended Complaint no later than December 7, 2012. Unless Bateman alleges facts supporting a claim that an assignment of his loan was void, he may not reassert claims based on the argument that Bank of New York does not have the right to enforce the loan documents. With respect to any other claim, including any potential claim under section 480-2, Bateman should specifically allege which Defendant he is seeking to hold liable and facts supporting the claim. For

example, he should not refer to "Defendants" generally when he is arguing that Countrywide did not have an operable loan modification program.

   IT IS SO ORDERED.

   DATED: Honolulu, Hawaii, November 14, 2012.



      /s/ Susan Oki Mollway
      Susan Oki Mollway
      Chief United States District Judge

Bateman v. Countrywide Home Loans Inc., et al.; Civ. No. 12-00033 SOM/BMK; ORDER DISMISSING FIRST AMENDED COMPLAINT